### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDRIZIO DE LA CRUZ<br><br>          Plaintiff,<br><br>   v.<br><br>MASTERCARD INTERNATIONAL INC.<br>    and<br>ARES ACQUISITION CORP.,<br>        Defendants. | COMPLAINT<br><br>Case No. 22-9010 |

Plaintiff Edrizio De La Cruz brings this suit against Defendants Mastercard International Inc. and Ares Acquisition Corp. Plaintiff alleges as follows:

1.      This case arises from Defendants' termination of De La Cruz's employment, based on the false assertion that he had voluntarily resigned, and in violation of state and federal law.

2.      The story starts in November 2021, when Defendants acquired Arcus Financial Intelligence. De La Cruz had co-founded Arcus and served as its CEO. As part of the transaction, De La Cruz became an employee of Defendants.

3.      De La Cruz agreed to receive part of the proceeds from the sale of Arcus over a period of two years. De La Cruz would be entitled to deferred payments as long as he remained employed by the Defendants or was terminated without cause, among other triggers.

4.      The first payment was due in November 2022 and would exceed $500,000. In Spring 2022, however, De La Cruz disclosed to Defendants that he had been diagnosed with

anxiety. Defendants suggested that De La Cruz take unpaid medical leave under the Family Medical Leave Act (FMLA).

5.      The parties then began negotiating an arrangement in which De La Cruz would leave his employment in exchange for early payment of the amount he would become due in November 2022, along with other consideration. Defendants proposed a written agreement along those lines in June 2022, while De La Cruz was on his approved FMLA leave. The parties then commenced negotiating over the terms of that agreement.

6.      On August 23, 2022, De La Cruz's approved FMLA leave came to an end. As of that date, however, the parties were still exchanging proposals regarding De La Cruz's potential resignation. Accordingly, De La Cruz reported for work that day. But he discovered that the Company had eliminated his access to work email and taken him off the payroll.

7.      In short, De La Cruz had been terminated. To justify their actions, Defendants falsely asserted that De La Cruz had already voluntarily resigned. In fact, the parties were still negotiating over the terms of the potential resignation, and De La Cruz was prepared to resign only upon the conclusion of those negotiations.

8.      By terminating him without cause, and without paying him the deferred portion of the sales price, Defendants breached their contract with De La Cruz. In addition, Defendants violated the FMLA, New York City Human Rights Law, and New York State Human Rights Law. De La Cruz now seeks damages for these violations, along with other relief.

**PARTIES**

9.      De La Cruz is a former employee of Defendants and a domiciliary of Florida.

10.      Defendant Mastercard International Inc. is a corporation headquartered in New York.

11.     Defendant Ares Acquisition Corp. is a whole-owned subsidiary of Mastercard and the successor to Arcus Financial Intelligence, Inc. in 2021. It is a corporation headquartered in New York.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over Defendants because they are headquartered in New York.

13.     This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1331 because Plaintiff raises a claim under the FMLA, a federal law. In addition, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because De La Cruz seeks more than $75,000 and is a citizen of Florida, while Defendants are citizens of New York.

14.     Venue is proper in this district because all Defendants reside in this state and in this district and because Defendants' acts and omissions giving rise to Plaintiff's claim occurred in this district.

## FACTUAL ALLEGATIONS

### Founding of Arcus and Sale to Mastercard

15.     As a child, De La Cruz immigrated to the United States from the Dominican Republic. After working as an aircraft engineer and investment banking analyst, among other jobs, he co-founded Arcus (initially known as Regalii) in 2013. De La Cruz also served as CEO of Arcus.

16.     On November 23, 2021, Mastercard acquired Arcus.

17.     As part of the acquisition, De La Cruz became an employee of Defendants. He also entered into an agreement to receive a portion of the sales price over a two-year period. The

deferred payment was known as the "Holdback Amount," and the agreement was known as the "Holdback Agreement."

18.     Under the Holdback Agreement, half of the Holdback Amount was due to De La Cruz on the one-year anniversary of the transaction (in November 2022) and half was due on the two-year anniversary (in November 2023). De La Cruz was entitled to each payment if, on the due date, he was employed by Defendants.

19.     Alternatively, De La Cruz was immediately entitled to the entire Holdback Amount if he was terminated without cause, as defined in the agreement; resigned with good reason, as defined in the agreement; or died or became disabled, as defined in the agreement.

20.     Under the Holdback Agreement, De La Cruz would receive $557,671 in November 2022 and an additional payment of the same amount in November 2023, if he remained employed by Defendants.

**Medical leave**

21.     Approximately four months after the transaction, in March 2022, De La Cruz informed Christine Fusaro, a Mastercard human resources official, that he suffered from anxiety. De La Cruz explained that, in a prior job, his employer had provided access to an in-house psychiatrist who helped him manage his condition.

22.     Defendants did not provide any similar support. Instead, soon after this conversation, Fusaro told De La Cruz that unpaid medical leave under the FMLA was the only option offered by the company for mental health issues.

23.     Accordingly, in May 2022, De La Cruz formally requested FMLA leave. He submitted a Mastercard-issued "Certification of Health Care Provider Form," signed by a

medical provider, recommending that he be granted leave for twelve weeks from May 31, 2022, to August 23, 2022.

24.    On the form, De La Cruz's medical provider stated that De La Cruz was "diagnosed with generalized anxiety disorder with features of panic attacks," and that De La Cruz "suffers from routine anxiety." The provider further stated that De La Cruz needed "weekly/bi-weekly therapy" for "extreme panic attacks and somatic symptoms."

25.    On May 18, 2022, Mastercard approved De La Cruz's FMLA leave request.

26.    On May 31, 2022, De La Cruz commenced his approved FMLA leave.

27.    On June 6, 2022, De La Cruz wrote publicly about his anxiety on his website, providing advice to other startup founders with similar issues.

**Negotiations Regarding Early Exit from Mastercard/Arcus**

28.    Before the start of De La Cruz's FMLA leave, he and Defendants discussed the possibility of an agreement in which Defendants would provide him an early payment of the amount he would become entitled to in November 2022, along with other consideration, in exchange for De La Cruz resigning and thus giving up his entitlement to the remainder of the Holdback Amount.

29.    The parties commenced negotiation of the arrangement during De La Cruz's FMLA leave.

30.    On approximately June 23, 2022, Defendants provided De La Cruz with drafts of documents that would memorialize the proposed arrangement for De La Cruz to receive an early payment of part of the Holdback Amount and voluntarily resign.

31.    Specifically, Defendants provided a draft letter from Arcus to De La Cruz, which we will refer to as the "Separation Letter," which stated that it would "outline[] the agreed-upon

terms relating to your separation." Those terms included a separation date of June 30, 2022, and an entitlement to severance and a portion of the Holdback Amount upon signing a release, among other provisions.

32.     Defendants also provided a draft "Agreement and Release" ("Release" for short) containing a release of claims, non-disclosure and confidentiality provisions, a non-compete restriction, and other terms.

33.     The Separation Letter and Release were presented by Defendants, and understood by De La Cruz, as collectively constituting a draft agreement regarding his potential exit from employment. Both parties proceeded to negotiate over the documents in that manner.

34.     For instance, on June 29, 2022, De La Cruz provided proposed revisions to the Separation Letter and Release to Defendants.

35.     On July 5, 2022, the Company accepted some of those changes and rejected others.

36.     On July 13, 2022, De La Cruz, through counsel, proposed further revised drafts of both the Separation Letter and Release.

37.     De La Cruz's counsel and Mastercard's counsel continued to exchange proposals throughout July and August.

38.     The negotiation during July and August focused most heavily on the confidentiality provisions proposed by Mastercard, which De La Cruz found to be excessive and unreasonable. De La Cruz maintains a website in which he publishes commentary and advice, and he was writing a manuscript for a book. Thus, De La Cruz wanted to ensure that the agreement did not unduly limit his ability to speak and write about his experiences.

39.     Throughout these negotiations, both parties understood that De La Cruz's resignation was contingent on a final agreement regarding all of the terms of his separation. All of De La Cruz's statements and conduct were based on that understanding. No party asserted otherwise. And any reasonable counterparty would have understood De La Cruz's position, given that finalizing his resignation in the absence of an overall agreement would have meant giving up more than $500,000 due to him less than three months later, for no benefit.

### De La Cruz's return from FMLA leave

40.     On August 23, 2022, De La Cruz's scheduled FMLA leave came to an end.

41.     As of that date, the parties were still negotiating over the terms of the potential separation. Specifically, De La Cruz was awaiting Defendants' response to his latest proposal. Neither party had suggested to the other that any agreement had been completed or that De La Cruz's resignation had already become final.

42.     Because the parties had not completed an agreement, De La Cruz reported for work on August 23. He informed the co-CEO of Arcus that he was returning to work.

43.     However, De La Cruz was unable to resume working because Defendants had eliminated his access to work email. In addition, they had taken away his access to Slack, a software platform used for internal company communication.

44.     Aside from eliminating his ability to communicate on work channels, Defendants also removed De La Cruz from the payroll. He received no paychecks after returning from FMLA leave.

45.     On the day of his return, De La Cruz reported to Defendants that his email and Slack access had been eliminated.

46.     After seeing no change in his access to email or Slack, De La Cruz followed up on August 26, 2022, by sending an email from his personal email account to Mastercard officials. He again reported that he was ready to continue working, but that he could not do so because of his lack of access to email and Slack.

47.     By removing him from the payroll and eliminating his ability to communicate on work channels, and by refusing to restore his access or return him to the payroll, Defendants terminated De La Cruz, without cause.

48.     However, Defendant did not pay De La Cruz the Holdback Amount as required by the Holdback Agreement in the case of termination without cause.

49.     Defendants justified their position by claiming that De La Cruz had actually resigned on June 30, 2022, and thus lost his entitlement to the Holdback Amount.

50.     Defendants' claim was plainly inconsistent with the parties' statements and comments to date. In reality, on June 30, 2022, De La Cruz was waiting for a response from Defendants to his proposed edits to the Separation Letter and Release. Those negotiations continued for two months afterwards, until after August 23, 2022. And De La Cruz never suggested that he intended to resign without a final agreement on all terms.

51.     Moreover, Defendants had asked De La Cruz to perform work on July 1, 8, and 20, and he had done so, thus disproving any claim that he resigned on June 30, 2022.

52.     While maintaining that De La Cruz had already resigned, Defendants demanded on September 15, 2022, that De La Cruz decide whether to sign the resignation agreement by September 19, 2022. If De La Cruz chose not to sign, the Company said, then "the negotiations will have come to an end."

53.     De La Cruz declined to sign. He instead asked Defendants, again, to allow him to continue working.

54.     Defendants refused, falsely insisting that De La Cruz had resigned even though he had not signed any resignation agreement.

## COUNT I

### Breach of contract

55.     The Holdback Agreement provided that De La Cruz would immediately become entitled to the entire Holdback Amount if he was terminated without cause.

56.     The Holdback Agreement defines "Cause" as meaning: "(a) the willful and repeated failure by the Holdback Party to substantially perform his duties or responsibilities (other than due to Disability) and failure to cure such failure to the reasonable satisfaction of Parent within thirty (30) days after the Holdback Party has received a written demand of performance from the applicable member of the Company Group, (b) the Holdback Party's engaging in gross misconduct that is injurious to the applicable member of the Company Group, including material damage to such member of the Company Group's reputation or standing in its industry, (c) the Holdback Party's having been convicted of, or entered a plea of guilty or nolo contendere to, a crime that constitutes a felony, or a crime that constitutes a misdemeanor involving moral turpitude, (d) the material breach by the Holdback Party of any material provision of any material written covenant or agreement with the applicable member of the Company Group, or (e) the breach by the Holdback Party of the applicable member of the Company Group's code of conduct, or any material provision of the following policies of such member of the Company Group: non-discrimination, substance abuse, anti-harassment, non-retaliation, workplace violence, nepotism, travel and entertainment, corporation information

security, antitrust/competition law, enterprise risk management, accounting, contracts, purchasing, communications, investor relations, immigration, privacy, insider trading, financial process and reporting procedures, financial approval authority, whistleblower, anti-corruption, foreign corrupt practices act, and similar policies, whether currently in effect or later adopted."

57.     None of the elements of "Cause" occurred here.

58.     Defendants have never claimed to De La Cruz that there was cause to terminate him.

59.     Nonetheless, Defendants terminated De La Cruz by removing him from the payroll and eliminating his access to work email and Slack on the date that his approved FMLA leave came to an end, then refusing to restore his access or restore him to the payroll.

60.     Contrary to Defendants' claims, De La Cruz never resigned from his employment. Rather, he negotiated with Defendants over an agreement providing for his resignation, but those negotiations did not lead to any final agreement.

61.     Under the Holdback Agreement, Defendants had three days to pay De La Cruz the Holdback Amount following his termination without cause.

62.     More than three days have passed since De La Cruz's termination, but he has received no payment of the Holdback Amount from Defendants.

## COUNT II

## Family Medical Leave Act (FMLA)

63.     Under the FMLA, when an eligible employee takes leave, the employee "shall be entitled, on return from such leave," to "be restored . . . to the position of employment held by the employee when the leave commenced" or to an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a).

64.     De La Cruz was an eligible employee under the FMLA because he had been employed for more than 12 months by Arcus and had worked more than 1250 hours for Arcus during that period. Defendants were successors to Arcus for purposes of the FMLA.

65.     Mastercard and Ares are covered employers under the FMLA because they each employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

66.     De La Cruz took FMLA leave, which was formally approved by Defendants, from May 31 to August 23, 2022.

67.     On August 23, 2022, however, Defendants failed to restore De La Cruz to the same or equivalent position occupied before his leave, thereby violating the FMLA.

68.     Instead, as a pretext for violating his FMLA rights, Defendants falsely claimed that De La Cruz had voluntarily resigned during his approved leave.

**Count III**

**New York State Human Rights Law**

69.     The New York State Human Rights Law (NYSHRL) prohibits discrimination on the basis of disability status.

70.     De La Cruz has a disability within the meaning of the NYSHRL because his anxiety and panic attacks constitute a physical, mental and medical impairment resulting from a neurological condition preventing the exercise of normal bodily functions and demonstrable by medically accepted clinical diagnostic techniques.

71.     De La Cruz was qualified to hold his position of employment with Defendants.

72.    De La Cruz was terminated from employment when Defendants eliminated his access to work email and Slack and removed him from the payroll, then refused to restore his access or return him to the payroll.

73.    The circumstances of De La Cruz's termination create an inference of discrimination because Defendants' stated rationale—that De La Cruz had voluntarily resigned on June 30, 2022—was plainly false and pretextual.

74.    Further, soon after De La Cruz informed Defendants of his condition, they suggested he take unpaid leave. Defendants then terminated him upon his return from that leave.

**Count IV**

**New York City Human Rights Law**

75.    The New York City Human Rights Law (NYCHRL) prohibits discrimination on the basis of disability status.

76.    De La Cruz has a disability within the meaning of the NYSHRL because his anxiety and panic attacks constitute a physical, mental, medical, and psychological impairment.

77.    De La Cruz was qualified to hold his position of employment with Defendants.

78.    De La Cruz was terminated from employment when Defendants eliminated his access to work email and Slack and removed him from the payroll, then refused to restore his access or return him to the payroll.

79.    The circumstances of De La Cruz's termination create an inference of discrimination because Defendants' stated rationale—that De La Cruz had voluntarily resigned on June 30, 2022—was false and pretextual.

80.    Further, soon after De La Cruz informed Defendants of his condition, they suggested he take unpaid leave. Defendants then terminated him upon his return from that leave.

## PRAYER FOR RELIEF

WHEREFORE, De La Cruz requests the following relief:

A.  Damages for breach of contract, equal to at least the full Holdback Amount.

B.  Damages for violations of the FMLA, NYSHRL, and NYCHRL, including backpay

and benefits, front pay and benefits, the full Holdback Amount, and damages for

emotional distress under the NYSHRL and NYCHRL.

C.  An award of litigation costs and expenses, including reasonable attorneys' fees.

D.  Pre-judgment interest.

E.  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY

Plaintiff demands trial by jury on all issues.

Respectfully submitted,

**/s/ Daniel M. Rosenthal**
Daniel M. Rosenthal (*pro hac vice* motion pending)
Ryan E. Griffin (*pro hac vice* motion forthcoming)
JAMES & HOFFMAN, P.C.
1629 K Street NW, Suite 1050
Washington, DC 20006
Tel: (202) 496-0500
Fax: (202) 496-0555
dmrosenthal@jamhoff.com
regriffin@jamhoff.com

Dated: October 22, 2022